Argued April 28, affirmed May 21, petition for rehearing
denied July 7, 1970

# EUGENE STUD & VENEER, INC., *Appellant, v.*
# STATE BOARD OF FORESTRY, *Respondent.*

469  P2d 635

*Frank E. Bocci,* Eugene, argued the cause and filed the brief for appellant.

*John W. Osburn,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

This appeal is from a judgment dismissing plaintiff's suit for specific performance of an alleged timber sale contract. The timber was to be logged from state forest lands designated as Tilden Creek No. 4 in Lane County.

The plaintiff alleged: that the defendant, State Board of Forestry, advertised for sale at public auction on October 2, 1968, timber to be severed from Tilden Creek No. 4; that the plaintiff submitted a bid of $180,357.50, which was the highest bid; that it was "accepted" by the defendant as the "successful bid" that defendant retained plaintiff's deposit, but that on October 8, 1968, the defendant notified plaintiff that plaintiff's bid was rejected and returned the deposit. The answer, containing admissions, denials, and "allegations," claims that the defendant did not at the conclusion of the auction accept the plaintiff's bid as the successful bid, but merely as the highest bid received.

The trial court held that the defendant had a right to reject the plaintiff's bid; that the rejection was in good faith, within a reasonable time, and a proper discharge of the defendant's lawful authority; and that the Unit Forester who received the bids on October 2 did not have or purport to have authority to bind the state to a contract of sale.

The evidence discloses that when the timber was advertised for sale the forestry department made an estimate of the amount of timber on the unit, based upon projections of known timber on adjacent tracts. Before the bidding, plaintiff did a 20 per cent cruise of the timber which revealed that there was a substantial overrun of Douglas Fir and an underrun of lesser species. After the bidding was completed, the State Forester ordered a 100 per cent cruise which showed inaccuracy of the estimate. The fair market value of the timber was approximately $100,000 greater than plaintiff's bid.

Most questions presented by the various points raised by the plaintiff are determined by deciding whether there was a contract at the time the bidding closed.

■ The notice of sale sent to individuals and the newspaper advertisements announcing the sale stated that "The State Forester reserves the right * * * to reject any or all bids." The bidding was conducted by Mr. Wagner, Unit Forester for Lane County. When the bidding was closed, he had plaintiff's bidding agent execute a written confirmation of the bid which, with the plaintiff's deposit, he sent to the State Forester. Throughout the pleadings and brief, plaintiff repeatedly states that Mr. Wagner declared the plaintiff "to be the highest and successful bidder." The testimony

of Mr. Wagner simply does not bear out these assertions. When plaintiff's counsel questioned Mr. Wagner as his own witness, the following testimony was elicited:

"Q  Well, did the bidding stop?

"A  Yes, that is correct, and I declared a high bidder.

"Q  You declared a high bidder?

"A  That is correct.

"Q  And, who, Mr. Wagner, did you declare as the high bidder?

"A  Eugene Stud & Veneer, Incorporated.

"   *   *   *   *   *

"Q  And by your initialling you concluded that it [the confirmation of bid] was made out correctly?

"A  Yes, that is correct.

"Q  And that Eugene Stud & Veneer was, in fact, the successful bidder, is that correct?

"A  They were the high bidder I would say.

"*   *   *   *   *

"Q  But I mean you, William Wagner, had the authority to sell whatever timber areas you chose on behalf of the State of Oregon, isn't that true?

"A  Well, not sell, but we placed them for the public to bid on. We select them. That is correct."

Plaintiff relies principally upon ORS 72.3280(2):

"A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner   *   *   *."

However, ORS 72.3280(3) provides:

"Such a sale is with reserve unless the goods are in explicit terms put up without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale   *   *   *."

The statute governing the actions of the State Forester in disposing of state forestry products requires that the State Forester shall reserve the right to accept or reject any or all bids. ORS 530.059(2). Pursuant to this statute, the Administrative Rules then in effect governing forest land management, provided that the State Forester, in addition to separate authority granted him by law, could execute contracts or cause the execution of timber sale contracts by the Assistant State Forester and Deputy State Forester. Unit Foresters, including those in Lane County, could negotiate sale of forest products not to exceed $500 in total value. Oregon Administrative Rules ch 629, § 21.005.

■■ These statutes and regulations, of which we take judicial notice (ORS 41.410 and 183.360), not only make it clear that the sale in this instance was conducted in accordance with law, but that the State Forester, under the statute, had no choice other than to reserve the right to reject any and all bids. The statute must be read into any and all bids. The statute must be read into any offer by the State Forester to receive bids. See Annotation, Right of Public Authorities to Reject all Bids for Public Work or Contract, 31 ALR 2d 469 (1953); also, 3 ALR 3d 864 (1965). The right to reject bids is the type of reservation referred to in ORS 72.3280(3). Completion of the sale in this case could be accomplished only by the State Forester or the specifically designated forestry department personnel.

Counsel have cited numerous authorities to us. This case must be judged upon the Oregon statutes and regulations applicable. We find the following language to be an accurate summation:

"* * * The contract becomes complete only when the bid is accepted, this being *ordinarily* de-

noted by the fall of the hammer * * *." (Emphasis supplied.) 7 Am Jur 2d 237-38, Auctions and Auctioneers § 19.

"The auctioneer merely invites offers from successive bidders which he may accept or reject unless, by announcing that the sale is without reserve or by other means, he indicates that he is making an offer to sell at any price bid by the highest bidder. Restatement, *Contracts* § 27." 7 Am Jur 2d 238, Auctions and Auctioneers § 19, n. 17.

"Where the seller reserves the right to refuse to accept any bid made, a binding sale is not consummated between the seller and the bidder until the seller accepts the bid. Furthermore, where a right is reserved *in the seller* [in the case at bar "The State Forester" was designated as the seller in all notices and he reserved the right to reject bids] to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid, and this applies to the auction of public as well as private property." (Emphasis supplied.) 7 Am Jur 2d at 238.

See also 1 Corbin, Contracts 481-85, § 108 (1963); 7 CJS 1254, Auctions and Auctioneers § 7 (4); 1 Williston, Contracts 76, § 29 (3rd ed 1957); *Erie Coal Co. v. United States*, 266 US 518, 45 S Ct 181, 69 L Ed 417 (1925); *Continental Can v. Commercial Etc.*, 56 Wash 2d 456, 347 P2d 887, 354 P2d 25 (1959). Plaintiff has cited several cases which are distinguishable because the contract involved was entered into by acceptance of a bid in conformance with the bid notices or the authority of the government agents. *State v. Clinger*, 72 Idaho 222, 238 P2d 1145 (1951); *State ex rel R.M.F. Co. v. Toole*, 26 Mont 22, 66 P 496 (1901); *City of New York v. Union News Co.*, 154 NYS 638, 169 AD 278 (1915); *Brown v. City of New York*, 108 NYS 555, 57 Misc Rep 433 (Sup Ct 1907).

■ Plaintiff asserts that defendant should not have been allowed to introduce evidence to show: the mistake in the estimate; the lawful exercise of authority by the State Forester; the lack of authority in the agent, or the existing forestry regulations. He states that these matters were introduced over his objection in spite of the fact that the answer was a general denial. The court takes notice of the statutes and regulations. Defendant's evidence was proper to controvert plaintiff's under the admissions, denials and allegations of the answer. The failure of plaintiff's case, in fact, was established by the evidence plaintiff produced.

We hold that the trial court's conclusions were correct.

The judgment is affirmed.